IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| DARYN S MORICI,<br>10 Rosanne Ln.<br>Rockville, MD 20851<br><br>                                    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br>100 North Tryon Street<br>Charlotte, NC 28255<br><br>Serve: The Corporation Trust, Incorporated<br>2405 York Road, Suite 201<br>Lutherville Timonium, MD 21093-2264<br><br>                                    Defendant. | Civil Action No.: 8:21-cv-1716<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Daryn S. Morici, by counsel, brings the following Complaint against Bank of America, N.A. In support of her claims, she states as follows:

## INTRODUCTION

1.      This case demonstrates that, as the entities that perform the day-to-day management of loans, "servicers can have a direct and profound impact on borrowers."[1] Here, Plaintiff sought a COVID-19 forbearance from her home loan servicer, Bank of America, N.A. ("BANA") and complied with all of forbearance agreement's terms. Despite this, BANA refused to honor the forbearance agreement, considered Plaintiff's loan delinquent, threatened Plaintiff with foreclosure, and reported Plaintiff as delinquent on her mortgage to the credit bureaus.

---

[1] *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024).

1

2. In response to the ongoing COVID-19 pandemic, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, ___ Stat. ___ (2020) ("CARES Act").

3. As part of this relief, consumers are allowed to request a 180-day forbearance on their mortgages as a result of financial hardship due to the COVID-19 emergency. Some mortgage servicers are administering these forbearances in 90-day increments.

4. The CARES Act also amended the Fair Credit Reporting Act to require that, if a creditor made an "'accommodation' to defer one or more payments" during the COVID-19 pandemic, the creditor "shall report the credit obligation or account as current" during the period of forbearance. In other words, if a consumer's account was current at the time the consumer received a forbearance, the mortgage servicer must report the account as current during the forbearance period.

5. As a result of the economic hardship that she faced as a result of the COVID-19 pandemic, Plaintiff requested and received a seven-month forbearance from BANA for her mortgage. Under the forbearance agreement, Plaintiff's monthly payments during the forbearance period would be deferred until her loan matured and as long as she started making her regular monthly payments at the end of the forbearance period, her loan would be considered current.

6. Plaintiff complied with all of the terms of the forbearance agreement and started making timely payments on the mortgage in November 2020. However, BANA refused to consider her loan current and instead sent her monthly statements stating that her loan is delinquent and that she may face a potential foreclosure, and has reported her mortgage as delinquent to the credit bureaus. These actions violated BANA's agreement with the Plaintiff.

7.      In order to correct BANA's mortgage servicing errors, Plaintiff disputed the errors with BANA through a Qualified Written Request and by sending dispute letters to the credit bureaus.

8.      In responding to Plaintiff's Qualified Written request and credit disputes, BANA violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

9.      Because of BANA's multiple violations of RESPA and the FCRA and its breach of the forbearance agreement, Plaintiff is entitled to her actual, statutory, and punitive damages; specific performance of her forbearance agreement; costs; and attorney's fees.

## THE PARTIES

10.     Plaintiff Daryn Morici is a natural person who resides in Rockville, Maryland and is a "consumer" protected by the FCRA.

11.     BANA is a national association that both owned Plaintiff's mortgage and also acted as her mortgage servicing company with a principal place of business in Charlotte, North Carolina. At all times relevant to this Complaint, BANA was a mortgage loan servicing company governed by RESPA and a furnisher governed by the FCRA.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. § 1331, 12 U.S.C. § 2605(f), and 15 U.S.C. § 1681(p). It also has supplemental jurisdiction over the Plaintiff's state-law claims under 28 U.S.C. § 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The CARES Act

14. As part of the CARES Act, Congress provided relief for those affected by the COVID-19 emergency with respect to mortgage payments due under federally-backed mortgages.

15. Section 4022(b) of the CARES Act provides that "a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan." The borrower may do so by "(A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency."

16. Upon receipt of a forbearance request, "such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower." *Id.*

17. The CARES Act also amended the Fair Credit Reporting Act to ensure that consumers were not punished for electing forbearance. Specifically, the FCRA as amended now provides:

> If a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall—
> **(I)**     report the credit obligation or account as current; or
> **(II)**    if the credit obligation or account was delinquent before the accommodation—
> **(aa)**  maintain the delinquent status during the period in which the accommodation is in effect; and
> **(bb)**   the consumer brings the credit obligation or account current during the period described in item (aa), report the credit obligation or account as current.

15 U.S.C. § 1681s-2(a)(1)(F).

**Plaintiff Obtained a COVID-19 Forbearance from BANA**

18. Plaintiff's mortgage loan is owned and serviced by BANA.

19. In or around April 2020, Plaintiff requested a COVID-19 forbearance from BANA. At the time that Plaintiff requested the forbearance, she was current on her mortgage.

20. BANA gave Plaintiff a three-month forbearance.

21. At the end of the three-month period, Plaintiff requested and obtained an additional three-month forbearance.

22. On October 1, 2020, BANA sent Plaintiff a letter stating that her payment forbearance would end on October 31, 2020 and offered her a payment deferral program.

23. Under BANA's offer, the mortgage would be brought current, and the past-due principal, interest payments, out-of-pocket escrow advances, and third-party fees would be deferred and wouldn't accrue interest. Instead, the unpaid deferred amounts would be due on the maturity date of the mortgage or on the sale or transfer of the property, refinance of the mortgage, or payoff of the loan. No other loan terms would be changed.

24. BANA's letter included a "Clarity Commitment," which explained that the proposed payment deferral included a total deferred principal balance of $11,338.64, which included $8,369.27 in past-due principal and interest payments and $2,969.27 in additional taxes and insurance.

25. BANA's letter told the Plaintiff that "to accept this offer, simply resume making monthly payments of $1,812.61 by November 15, 2020 on the existing loans, subject to changes in the escrow account for tax and insurance disbursements."

26. Plaintiff accepted the payment deferral by making her regular monthly mortgage payment of $1,812.61 on November 1, 2020.

27. Despite this, BANA sent Plaintiff a mortgage statement dated November 2, 2020 stating that Plaintiff's mortgage was more than $14,000 past due.

28. Plaintiff called BANA on November 12, 2020 and confirmed that she was accepting the payment deferral and had made the correct payment.

29. Plaintiff continued making her regular mortgage statements each month.

30. Over the next several months, BANA continued to send Plaintiff monthly mortgage statements stating that Plaintiff's mortgage was severely delinquent.

31. Plaintiff spoke with BANA several additional times regarding her acceptance of the payment deferral, including on January 4, 2021 and March 6, 2021. During these calls, she informed BANA that she had accepted the payment deferral and confirmed that she was making her regular monthly payment, as she was supposed to.

32. On March 17, 2021, Plaintiff spoke to BANA again and learned that even though she had accepted the payment deferral, BANA had been placing her monthly payments in a suspense account instead of applying them to her loan. BANA told her that the payments could be moved from the suspense account and applied to her loan, and Plaintiff asked that that be done.

33. Despite this, Plaintiff continued to have issues with BANA. It insisted that her loan was still past due, that she had not properly accepted the payment deferral program, and that her loan was still delinquent.

34. To make matters worse, BANA started reporting Plaintiff's mortgage as derogatory in April 2021.

**Plaintiff Disputes BANA's Inaccurate Credit Reporting and Mortgage Servicing Errors**

35. Specifically, Bank of America reported Plaintiff's mortgage to the credit bureaus as more than 120 days delinquent in April 2021 with a past-due balance of almost $11,000.

36. To be clear, this reporting was inaccurate. Plaintiff complied with all of the terms of the forbearance agreement, so her loan was current and should have been reporting without any past-due balance or late payments.

37. On May 13, 2021, Plaintiff sent a dispute letter to TransUnion, Experian, and Equifax disputing the inaccurate information that BANA was reporting about her mortgage. She enclosed a copy of the payment deferral agreement and proof of her monthly payments.

38. Upon information and belief, the credit bureaus forwarded this information to BANA.

39. BANA failed to conduct an investigation into the substance of Plaintiff's dispute and instead verified the derogatory payment history and past due balance as correct.

40. In the meantime, BANA sent Plaintiff a new payment deferral package dated May 14, 2021.

41. The new deferral agreement sought to defer $12,536.54 to the end of Plaintiff's loan, including $8,369.27 in past-due principal and interest payments, $70 in unexplained past-due third-party fees, and $4,097.27 in taxes and insurance.

42. BANA's letter explained that in order to accept this new offer, Plaintiff "must sign and return the attached Payment Deferral agreement, and Bank of America must receive it no later than June 1, 2021."

43. Plaintiff was confused as to why she would need to sign a new payment deferral agreement when she had already accepted the one that BANA sent her in October 2020, especially when it included unexplained late fees that she did not owe.

44. Therefore, Plaintiff sent BANA a qualified written request dated May 26, 2021 to BANA's designated address.

45. Plaintiff's qualified written request disputed BANA's rejection of the October payment deferral agreement, asked BANA to investigate the amount of her monthly payment, and disputed BANA's contention that she had made late payments on her mortgage.

46. Plaintiff's qualified written request also asked for documents to support her claims that BANA had made servicing errors, including copies of all telephone recordings, BANA's servicing notes for her loan, a transaction log, and any invoices for any charges assessed to her loan.

47. Then, on June 7, 2021, Plaintiff sent follow-up dispute letters to Equifax, Experian, and Trans Union regarding BANA's continued derogatory reporting of her mortgage.

48. BANA failed to properly respond to both the qualified written request and the credit disputes.

49. When BANA received Plaintiff's credit disputes from the bureaus, upon information and belief, it again failed to conduct an adequate investigation and instead verified the derogatory reporting as accurate.

50. Plaintiff's BANA mortgage is still reporting inaccurately on all three of her credit reports.

51. In addition, BANA failed to investigate and correct the errors in its mortgage servicing in response to Plaintiff's Qualified Written Request.

52. For example, BANA's response did not address Plaintiff's dispute regarding the information that BANA was reporting to the credit bureaus.

53. In addition, BANA did not provide all of the documents that Plaintiff requested.

54. For example, it did not provide any telephone recordings or any of the invoices associated with the charges on the loan.

55. Both of these categories of information would have helped Plaintiff to understand why BANA had rejected her prior deferral agreement and why it believed she should sign a new deferral agreement that required her to pay additional fees that she did not owe.

56. At all times relevant to this Complaint, BANA's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, BANA's conduct was willful because it was done in accordance with BANA's intended procedures. In addition, BANA prioritizes processing disputes quickly rather than making sure that the disputes are investigated thoroughly and accurately.

57. As a result of BANA's conduct, Plaintiff suffered significant actual damages. For example, her credit score dropped by more than 100 points as a result of BANA's refusal to correct the inaccurate information in response to her credit disputes.

58. In addition, Plaintiff had planned to move cross-country in the summer of 2021, but had to delay her plans because she would not qualify to purchase a new home due to her lowered credit score.

59. Plaintiff also suffered emotional distress, including because her had to delay her move and she thought her house would be foreclosed on, both of which were very stressful.

<b><u>COUNT ONE</u>:</b>
<b>Violation of RESPA, 12 U.S.C. § 2605(e)(2)</b>

60. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

61. As alleged, Plaintiff submitted a qualified written request to BANA in May 2021.

62. Plaintiff sent her qualified written request to the address that BANA designated for the receipt of qualified written requests.

63. BANA received Plaintiff's qualified written request.

64. BANA violated 12 U.S.C. § 2605(e)(2) in responding to Plaintiff's qualified written request by: failing to make appropriate corrections to her account, including reversing the denial of her payment deferral, fixing the inaccurate credit reporting; and correctly the derogatory status of her loan.

65. BANA also violated 12 U.S.C. § 2605(e)(2) by failing to provide Plaintiff with some of the information she requested or an explanation of why the requested information was unavailable.

66. As a result of BANA's conduct, Plaintiff suffered concrete and particularized harm, including: the incurring of unnecessary fees and interest on her mortgage account, derogatory credit reporting, and emotional distress, including aggravation and stress.

67. Upon information and belief and based on BANA's repeated violations, BANA's noncompliance with 12 U.S.C. § 2605(e)(2) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e).

68. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA for each of its violations of 12 U.S.C.§ 2605(e)(2) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT TWO:**
**Violation of RESPA, 12 U.S.C. § 2605(e)(3)**

69. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

70. BANA violated 12 U.S.C. § 2605(e)(3) by continuing to provide derogatory information regarding the overdue payments during the 60-day period after BANA received Plaintiff's Qualified Written Request.

71. Because of BANA's conduct, Plaintiff suffered concrete and particularized harm, including the reduction of her credit score and emotional distress.

72. Upon information and belief, discovery will demonstrate that BANA's noncompliance with 12 U.S.C. § 2605(e)(3) is a part of a pattern or practice of noncompliance with 12 U.S.C. § 2605(e), including because this conduct was a result of BANA's standard procedures that was used in responding to all Qualified Written Requests.

73. Upon information and belief, BANA does not have a procedure in place to freeze negative payment information when it receives a Qualified Written Request challenging the validity of the payment information.

74. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA for its violations of 12 U.S.C. § 2605(e)(3) in an amount to be determined by the Court pursuant to 12 U.S.C. § 2605(f).

**COUNT THREE:**
**Violation of FCRA, 15 U.S.C. §1681s-2(b)(1)(A)**

75. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

76. On one or more occasion within the past two years, by example only and without limitation, BANA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute.

77. When Plaintiff disputed her account with the credit bureaus, BANA used a dispute system named "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher customers (such as BANA). E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systematic and uniform.

78. When a consumer reporting agency receives a consumer dispute, it (usually via an outsourced vendor) translates each dispute into an automated consumer dispute verification ("ACDV") form.

79. Upon information and belief, the ACDV form is the method by which BANA has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

80. Upon information and belief, Experian, Equifax, and Trans Union each forwarded Plaintiff's dispute via an ACDV to BANA.

81. BANA understood the nature of Plaintiff's disputes when it received the ACDV forms.

82. Upon information and belief, when BANA received the ACDV form containing Plaintiff's dispute, BANA followed a standard and systematically unlawful process where BANA only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

83. Upon information and belief, when BANA receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

84. As a result of BANA's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff suffered concrete and particularized harm, including a decreased credit score and other emotional distress.

85. BANA's conduct in violating 15 U.S.C. § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, BANA was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

<b>COUNT FIVE:</b><br><b>Violation of FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)</b>

87. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

88. On one or more occasion within the past two years, BANA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the credit reporting agencies.

89. As Plaintiff detailed in the previous Count, BANA has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies, including for Experian, Equifax, and Trans Union.

90. When it received the ACDV forms from the credit-reporting agencies, BANA did not review any of the documentation that Plaintiff attached to her dispute, which demonstrated that Plaintiff had complied with all of the terms of her payment deferral and was not late on her loan.

91. If BANA had reviewed these documents, which included a copy of the payment deferral agreement and proof of her monthly mortgage payments, then it would have known that that its previous reporting was incorrect and needed to be updated.

92. BANA also failed to consider the other information that the consumer-reporting agencies provided regarding Plaintiff's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

93. BANA is aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

94. BANA does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

95. BANA understood Plaintiff's disputes and that Plaintiff claimed the information was inaccurate.

96. As a result of BANA's violations of 15 U.S.C. § 1681-2(b)(1)(B), Plaintiff suffered concrete and particularized harm, including but not limited to: decreased credit score and other emotional distress.

97. BANA's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. §§ 1681n and 1681o.

98. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from BANA in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT SIX:
### Breach of Contract

99. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

100. As discussed above, in October 2020, BANA offered Plaintiff a payment deferral agreement, which would bring her loan current if Plaintiff resumed her monthly payments by November 15, 2020.

101. Plaintiff accepted BANA's offer by resuming her monthly mortgage payments on November 1, 2020.

102. Therefore, the payment deferral was a valid and binding contract between Plaintiff and BANA.

103. BANA breached the contract by refusing to consider her loan current, placing her monthly payments in a suspense account, reporting her as delinquent to the credit bureaus, and charging her fees on the loan.

104. Plaintiff is continuing to make her monthly mortgage payments as required by the payment deferral agreement.

105. Plaintiff has been damaged by BANA's refusal to honor the payment deferral agreement. Her mortgage is considered delinquent, she is unable to buy a new home and complete her cross-country move, and her mortgage may be foreclosed.

106. Therefore, the Plaintiff is entitled to recover her actual damages and specific performance of the payment deferral agreement.

WHEREFORE, Plaintiff requests that the Court enter judgment against BANA for specific performance of the payment deferral agreement; award actual, statutory, and punitive damages; attorney's fees and costs; and any other appropriate relief.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**DARYN S. MORICI**

By:_____/s/ Kristi C. Kelly_____
Kristi C. Kelly, Bar No. 07244
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com

*Counsel for Plaintiff*